# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 04-CV-2843 (JFB) (JMA)
_____

WILLIE GRAY,

Plaintiff,

VERSUS

LUTHERAN SOCIAL SERVICES OF METROPOLITAN NEW YORK, INC.,

Defendant.

_____

Memorandum and Order
July 13, 2006

_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Willie Gray brings this action alleging employment discrimination on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), Civil Rights Act of 1866, 42 U.S.C. § 1981, the New York State Human Rights Law, Executive Law § 269 *et seq.*, and the New York City Civil Rights Law, against defendant Lutheran Social Services of Metropolitan New York, Inc.[1] Plaintiff asserts that he was terminated as a result of his race in favor of a Hispanic employee. Defendant now moves for summary judgment on all claims. For the foregoing reasons, defendant's motion for summary judgment is granted.

## I. BACKGROUND

### A. FACTS

Defendant Lutheran Social Services of Metropolitan New York, Inc. ("Lutheran") is a not-for-profit social services agency. (Def's. Rule 56.1 Statement ("Def.'s 56.1") ¶ 1.)[2] Lutheran operates the Muhlenberg

---

[1] Plaintiff's complaint also alleges discrimination on the basis of his national origin. (Compl. ¶ 20, 23, 27.) However, at oral argument on the present motion, counsel for plaintiff withdrew the claim of discrimination on the basis of national origin.

[2] Where only one party's 56.1 Statement is cited, the other party does not dispute the facts alleged.

Residence, a supportive housing program in Brooklyn, New York. (*Id.* ¶ 2.) A percentage of the tenants come from shelters and a percentage are disabled. (Gonzalez Dep. at 7.) The housing at the residence is considered permanent, and the program offers a support mechanism to tenants to help find jobs. (*Id.* at 7-8.) Plaintiff Willie Gray, an African-American male born in Brooklyn, New York, is a former at-will employee of Lutheran, where he was employed as a cook at the Muhlenberg Residence. (*Id.* ¶ 4; Pl. Aff. ¶ 4.) Plaintiff was hired at Lutheran in November 2000 by Ray Gonzalez. (Gray Aff. ¶ 5; Gonzalez Dep. at 21.) Gonzalez, who is Puerto Rican, became his immediate supervisor when he first started working at Muhlenberg Residence. (Pl. Dep. at 17.) Plaintiff had several other supervisors during his employment including Rebecca Johnson, Joanna Ruiz, Jose Munez, and Wanda who, according to plaintiff, were all Hispanic. (Pl. Dep. at 18-19.)

Certain Lutheran employees' positions were funded through the U.S. Department of Housing and Urban Development ("HUD" or "the HUD grant"). (Def.'s 56.1 ¶ 6.) The Muhlenberg Residence is the only Lutheran program that is funded by HUD. (Crumb Dep. at 10.) Muhlenberg also receives funds from the New York City Department of Mental Health, the New York City Department of Homeless Services, and the New York State Office of Temporary Disability and Assistance. (*Id.* at 9-11.) Under the terms of the HUD grant, the grant began on April 23, 1999 and ran for three years. (*Id.* at 16.) The Chief Financial Officer testified that the HUD grant was extended to January 2004. (*Id.*) Toward the end of 2002, the HUD grant was reduced by 50% from $1.2 million to $600,000 because HUD can only support homeless individuals who are disabled, and only 100 of the 201 residents at the Muhlenberg Residence qualified for the HUD grant. (Crumb Dep. at 27, 39-40, Ex. 4.) Lutheran attempted, unsuccessfully, to obtain substitute funding. (*Id.* at 46.)

Lutheran employees whose positions were funded exclusively through the HUD grant were laid off in 2003. (Gonzalez Dep. at 52; Crumb Dep. at 47.) On or around July 31, 2003, Lutheran's Program Director at Muhlenberg Residence, Joanne Ruiz, informed plaintiff by memo that:

> Due to program budget constraints the Muhlenberg Residence will have to undergo several layoffs. Regretfully, the position of cook will have to be cut as of August 14, 2003. I would like to thank you for you [sic] hard work and dedication to the Muhlenberg residents.

(Pl's Dep. at 26, Ex. 1.) When plaintiff learned that his position would be cut, he decided to utilize his remaining paid sick days. (Pl. Aff. ¶ 14.) Thus, plaintiff's last day of work at Muhlenberg was July 31, 2003, but he received payment for his accumulated sick days into August.

Lutheran asserts that plaintiff's position was funded exclusively by the HUD grant and that it had already allocated all of its HUD grant funds, requiring the termination of certain employees as a result of the loss of funds, including plaintiff. (Crumb Dep. at 46; Gonzalez Dep. at 32, 53.) Plaintiff, however, argues that the HUD Grant only funded Case Management positions and Employment Assistance relative thereto. (Pl.'s 56.1 ¶ 5; Crumb Dep. Ex. 1 at 0236.) HUD did not itemize which positions were to be cut when

2

it slashed the funding. (Gonzalez Dep. at 32.) Plaintiff also asserts that there was funding for the cook position from a different source. (Pl's Opp. to Def.'s Mot. at 13.)

Three other individuals were laid off at the time plaintiff was terminated in August 2003. (Gonzalez Dep. at 24.) One was a case manager, the second was a vocational coordinator, and the third employee was a rental agent. (*Id.* at 25-27.) Two of the other three terminated employees were African American and the third was Caucasian. (*Id.* at 26-27.) According to defendant, all four employees who were laid off in August 2003 had salaries that were funded exclusively through the HUD grant and they were the only employees who were paid for by HUD. (*Id.* at 52; Crumb Dep. at 46.) At the time plaintiff was laid off, Lutheran had used its HUD funding for that year and, as a result of the cut, was not receiving any additional funding from HUD because the HUD grant expired months before plaintiff was laid off.[3] (Crumb Dep. at 44.)

With respect to the other three terminated employees, Ruiz testified that the reason that particular case manager was laid off, as opposed to one of the other six case managers, was because her particular position was funded by HUD, whereas the other case manager/case worker positions were under different grants. (Ruiz Dep. at 21.) At the time of the layoffs in August 2003, there were no Hispanic case managers/case workers. (Gonzalez Dep. at 28.) Subsequent to the layoffs, a new case manager, who is African American, was hired in approximately May 2005. (Ruiz Dep. at 28-29.) Her position is not funded by HUD. (Ruiz Dep. at 28.) The vocational coordinator who was laid off was the only vocational coordinator. (Gonzalez Dep. at 28.) The position of vocational coordinator was eventually re-filled in January 2005, by an African American. (Ruiz Dep. at 28-29; Gonzalez Dep. at 29.) In addition, the rental agent who was laid off was the only rental agent at Muhlenberg Residence, and the position was never re-filled. (Gonzalez Dep. at 29.) None of the employees who were laid off were re-called for positions. (*Id.*)

After defendant eliminated the cook position, the duties were performed by a volunteer, Valez. (Gonzalez Dep. at 42-43; Ruiz Dep. at 25-26.) Gonzalez played no role in the hiring of Valez as a volunteer or later as a paid cook. (Gonzalez Dep. at 43-44.) Mr. Valez is of Hispanic descent. (Ruiz Dep. at 25.) Valez worked as a volunteer cook, receiving no salary until Lutheran received renewed HUD funding. (Gonzalez Dep. at 40-43.) On March 1, 2004, when the renewed HUD funding came in, Valez was hired into the paid cook position. (Gonzalez Dep. at 40-42, Ex. 3; Crumb Dep. at 43-44.) When Valez resigned in December 2004, the kitchen closed temporarily while résumés were sought. (Ruiz Dep. at 30.) A new cook was subsequently hired who is African American. (Gonzalez Dep. at 55.) Gray was not offered, nor did he re-apply, for the position. (Gonzalez Dep. at 55.) In addition to the

[3] According to the CFO, Muhlenberg expected to receive gap funding to cover the period from October 2002 (when the $600,000 HUD grant ran out) through January 2004, so Muhlenberg borrowed money from Lutheran to cover that period. (Crumb Dep. at 44-45.) However, in the summer of 2003, it became clear that they were not going to receive the gap funding and it was then that the decision was made to reduce the staff and let go of the four employees, including plaintiff. (Crumb Dep. at 45-46.)

newest cook, new case manager, and new vocational manager, who are all African American employees, Muhlenberg Residence subsequently hired a superintendent who is African American and another new case manager who is African American. (Ruiz Dep. at 58-59.)

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones,* 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R. Co.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available

4

for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

## III. DISCUSSION

### A. RACE DISCRIMINATION[4]

Because plaintiff presents no direct evidence of discriminatory treatment based on his race, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v.*

---

[4] In addition to alleging claims under Title VII, plaintiff alleges discrimination under New York State Executive Law § 290, et seq. Claims of discrimination brought under New York state law are analyzed using the same framework as claims brought under Title VII, and the outcome under state law will be the same as the outcome under Title VII. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996).

*Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "*de minimis.*" *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that he satisfies "*McDonnell Douglas*' s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was

false." *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co. of N.Y.*, 109 F. Supp. 2d 202, 207-208 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.*, 999 F. Supp. 506, 513-16 (S.D.N.Y. 1998) (advocating elimination of *McDonnell Douglas* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination); *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

## B. GRAY'S RACE DISCRIMINATION CASE

Defendant argues that Gray cannot establish a *prima facie* case because he cannot demonstrate that he was terminated under circumstances giving rise to an inference of discrimination. However, for purposes of this motion, the Court assumes the plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case. In response, defendant has put forth a non-discriminatory reason for the termination

– namely, the loss of HUD funding for the cook position occupied by plaintiff led to his termination. Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find race discrimination by examining each parties' evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 520 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

Gray argues the following points with respect to his claims of discrimination: (1) plaintiff was immediately replaced by a Hispanic employee; (2) three of the four employees terminated as a result of the cut in funding were African American; (3) the HUD grant did not fund the cook position and, regardless, there was funding available for the cook position. Defendant, however, sets forth evidence that unequivocally demonstrates that: (1) plaintiff's immediate replacement was a volunteer; (2) the other employees terminated were also terminated because their positions were funded by HUD; (3) when defendant later received funding for two of those positions, they were filled by African Americans; and (4) the HUD grant *did* fund the cook position. As set forth below, when plaintiff's evidence is viewed as a whole, plaintiff's purported evidence provides no basis for a reasonable jury to conclude plaintiff was terminated as a result of his race.

With respect to plaintiff's first point, although plaintiff argues he was replaced by a Hispanic individual, defendant offers evidence that, in the wake of the reduction in

HUD funding, plaintiff's replacement in the summer of 2003 was a *volunteer*. Plaintiff contests this point, arguing that Valez was not a volunteer and that when he returned to pick up his equipment within a week after he received the notice, he was told by one of the staff members that Muhlenberg Residence had a new cook. (Pl. Dep. at 54.) However, the uncontroverted evidence demonstrates that Valez did not become a paid employee until March 1, 2004. A payroll change notice states that Valez was a new hire on March 1, 2004, indicating that Valez was not a paid employee prior to that date. (Eke-Nweke Aff., Ex. 4; Gonzalez Dep. Ex. 3.) Furthermore, the deposition testimony consistently demonstrates that Valez occupied the position of cook as a volunteer prior to March 1, 2004. (Gonzalez Dep. at 40-43; Ruiz Dep. at 25.) Plaintiff's conclusory assertions to the contrary, without any evidence in support, do not undermine defendant's evidence that Valez was hired as a volunteer nor do plaintiff's conclusory assertions create a genuine issue of material fact.

Therefore, although plaintiff was replaced by a non-African American, only a very weak inference may be drawn because that replacement was first hired as a volunteer. More specifically, because Valez was hired as an unpaid volunteer, plaintiff's evidence that the cook position was re-filled soon after plaintiff's termination does not undermine defendant's non-discriminatory reason for plaintiff's termination – that defendant no longer had funding for the position. Valez did not replace plaintiff as a *paid* employee until March 1, 2004, approximately seven months after plaintiff's termination.

Furthermore, when Valez's employment ended, his replacement was an African American. (Gonzalez Dep. at 55.) This means that, out of the past six years, the cook position has been held by a non-African American for only one year. This evidence is particularly compelling to rebut any inference of race discrimination based on evidence that plaintiff's initial replacement was Hispanic.

In any event, although plaintiff's replacement by an employee outside of plaintiff's protected class is sufficient evidence to establish a *prima facie* case under *McDonnell Douglas*, that fact alone is not sufficient evidence, based on the overall record in this case, from which a reasonable trier of fact could find in favor of plaintiff. *See James,* 233 F.3d at 155 n.1; *see also Mangaroo v. Boundless Techs., Inc.,* 253 F. Supp. 2d 390, 400 (E.D.N.Y. 2003) ("The mere fact that someone of a different race was eventually hired to replace [p]laintiff, is not sufficient in and of itself to support a finding that [p]laintiff was terminated due to his race."); *see also Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999) (applying same analysis in an age discrimination case and holding that "[t]he replacement of an older worker with a younger worker does not itself prove unlawful discrimination").

With respect to plaintiff's second point, that three out of four employees who were terminated were African American, the uncontroverted evidence demonstrates that the reason those particular employees who were terminated were the ones chosen was based exclusively on the funding of their particular positions. Three of the four terminated employees, including plaintiff, were the only individuals who held these positions. Defendant did not choose among various individuals in those positions. As to the case manager position, although there were other employees who were case managers, the

employee who was terminated was the only employee whose case manager position was funded by HUD. The other positions were funded by different grants.[5] In fact, when additional funding later became available for two of these positions, African Americans were hired.

As to plaintiff's third point, plaintiff argues that the HUD grant did not fund the cook position and, thus, defendant's reason for his termination must be pretextual. Plaintiff further alleges that, in any event, defendant could not have eliminated that essential position of cook. In support of this argument, plaintiff asserts that there was funding for the cook position from a different source. (Pl's Opp. to Def.'s Motion at 13.) Plaintiff relies on Lutheran's consolidated budget report, sent to New York State, covering the period 7/1/02 through 6/30/03. (Crumb Dep. Ex. 6.) The document states, "in the Muhlenberg program unit $151,880 of the $265,000 in HUD income, [sic] has been allocated to the personal service expense." (Crumb Dep. Ex. 6.) That included $21,085 to the nutritional coordinator or cook. (Crumb Dep. Ex. 6.)

Plaintiff argues that this money is evidence that the cut in the HUD grant did not impact plaintiff's position because $21,085 was allocated to the cook position in 2003. The document, however, demonstrates on its face that it covered the period from 7/1/02 to 6/30/03, which was *prior* to plaintiff's termination. It did not cover funding for the period after plaintiff's termination.

Plaintiff further alleges that the HUD grant did not specifically fund plaintiff's position. This argument is directly contrary to plaintiff's argument above, that the HUD grant allocation of $21,085, listed in the consolidated budget report, was allocated to the cook position. Plaintiff has put forth no evidence to controvert defendant's position that HUD money was being used to fund the cook position or that the cut in the HUD grant led to plaintiff's termination.

In short, plaintiff concedes defendant's loss of funding, but simply argues (without any evidence) that the HUD money did not fund the cook position and, even if it did, defendant had money from other sources to fund the position.[6] Even assuming *arguendo* that the cook position was not specifically funded by the HUD grant or that other funds were available to fund the position, plaintiff has not pointed to any evidence of discriminatory intent. Though plaintiff may not agree with defendant's decision to eliminate the paid cook position as a result of the loss in HUD funding, plaintiff does not point to any evidence suggesting that defendant's real reason for his termination was based on race. As the Second Circuit has noted, "it is not the function of a fact-finder to second-guess business decisions, or to question a corporation's means to achieve a legitimate goal." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988). "Businesses routinely make decisions about

<hr/>

[5] Additionally, the overall record reflects that the racial make-up of the four employees who were terminated is representative of the racial make-up of the staff at Muhlenberg as a whole. (*See* Def.'s 56.1 ¶ 17.)

[6] Plaintiff also argues that the cut in funding could not have necessitated the elimination of the cook and that the cook was contractually necessitated. However, as defendant correctly points out, the fact that Muhlenberg residence needed a cook does not change the fact that the *paid* cook position was eliminated as a result of the loss in funding.

the appropriate allocation, or reallocation, of their resources . . . and such business judgments do not invariably provide evidence of discriminatory intent." *Foxworth v. Am. Bible Soc'y*, No. 03-CV-3005 (MBM), 2005 U.S. Dist. LEXIS 16105, at *21 (S.D.N.Y. July 28, 2005), *aff'd,* No. 05-5266, 2006 U.S. App. LEXIS 12450 (2d Cir. May 16, 2006); *see also Cianfrano v. Babbitt*, 851 F. Supp. 41, 48 (N.D.N.Y. 1994) (stating that an employer's stated reason may be "'a good reason, a bad reason, a reason based on erroneous facts, or . . . no reason at all, as long as its action is not for discriminatory reasons.'") (quoting *Nix v. WLCY Radio/Rahall Commc'n*, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Here, not only is there no evidence to counter defendant's contention that plaintiff's position was funded by the HUD money that was eliminated, but there is also no evidence that defendant's decision to terminate plaintiff, even if not mandated by the loss of HUD funding, was motivated by discrimination.

Finally, though plaintiff did not rely on this evidence in his opposition to defendant's motion for summary judgment, Gray alleged in his deposition that he heard Gonzalez call another African American employee, Calvin, a "monkey."[7]  (Pl. Dep. at 61.)  This isolated, highly offensive comment, directed at another employee, is insufficient to give rise to an inference of discrimination.  "It is well settled

that verbal comments may constitute evidence of discriminatory intent if the plaintiff can establish a nexus between the alleged discriminatory remarks and the defendant's decision to terminate the plaintiff's employment."  *Del Franco v. N.Y. City Off-Track Betting Corp.*, CV-02-3064 (JMA), 2006 U.S. Dist. LEXIS 25802, at *17 (E.D.N.Y. April 28, 2006).  However, when the statement is "unrelated to the decisional process itself," it is not sufficient evidence to establish a claim of discrimination.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring); *see also Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (finding isolated, stray remark insufficient to establish animus).  In the instant case, there is no evidence to suggest that Gonzalez was the one who made the decision to terminate plaintiff.  In fact, the memo terminating plaintiff was written by Ruiz (with a "cc" to Gonzalez and Ronald Drews, President/CEO).  In any event, even if Gonzalez was a decision-maker regarding plaintiff's termination, the stray remark as to Calvin, given the complete absence of any other evidence of discrimination as against plaintiff, is insufficient to defeat defendant's motion.[8]

---

[7] Plaintiff further alleges that Calvin was eventually terminated and replaced by a Hispanic individual.  (Pl. Dep. at 63-64.)  However, defendant does not remember the year or month Calvin was terminated.  (*Id.*)  Again, plaintiff did not raise this evidence in his opposition papers.  In any event, there is no evidence in the record from which a reasonable jury could conclude that Calvin was "similarly situated" to plaintiff.

[8] Furthermore, to the extent plaintiff alleges that Gonzalez discriminated against him, any inference of discrimination is undermined by the fact that Gonzalez hired plaintiff. *See Grady v. Affiliated Cent.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."); *see also Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) ("[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."); *Patterson v. J.P. Morgan Chase & Co.*, No. 01-CV-7513 (LMM), 2004 U.S. Dist. LEXIS 17135,

*See Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d Cir. 1994); *accord Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). Accordingly, the Court finds that no reasonable jury could find that this isolated statement, directed at someone other than the plaintiff, and wholly unrelated to the decisional process, creates an inference of discrimination as to plaintiff's termination.

In sum, viewing all the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff was terminated because of his race. Although plaintiff has offered several arguments to defeat summary judgment, "their combined weight is negligible, and no disputed material issues of fact remain." *Pisana v. Merrill Lynch & Co.*, No. 93-CV-4541 (LMM), 1995 U.S. Dist. LEXIS 10296, at *29 (S.D.N.Y. July 20, 1995) (granting summary judgment as to the ADEA claim). Plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that (1) the legitimate, non-discriminatory reason proferred by defendant was false, and (2) that more likely than not, plaintiff's race was the real reason for the termination. Instead, based on the testimony and documentary evidence submitted, the only rational conclusion is that plaintiff was terminated as a result of the cut in HUD funding. As the Second Circuit has stated, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would

_____

at *21 (S.D.N.Y. Aug. 26, 2004) ("When a plaintiff is in the protected . . . class at both the beginning and the end of employment, there is a presumption against a finding of . . . discrimination, although it does not compel summary judgment.").

necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). Accordingly, the Court finds that plaintiff failed to raise a genuine question of fact on his race discrimination claims and grants defendant's motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on plaintiff's claims of race discrimination is GRANTED. The Clerk of the Court shall enter judgment in favor of defendant and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 13, 2006
Central Islip, New York

* * *

The attorney for plaintiff is Vincent I. Eke-Nweke, Esq., Law Office of Vincent I. Eke-Nweke, P.C., 498 Atlantic Avenue, Brooklyn, New York 11217. The attorney for defendant is Zoe E. Jasper, Esq., Satterlee Stephens Burke & Burke LLP, 230 Park Avenue, Suite 1130, New York, New York 10169.